UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAMSOM MICHAEL,<br><br>                  Petitioner,<br><br>   v.<br><br>ICE FIELD OFFICE DIRECTOR,<br><br>                  Respondent. | Case No. C20-565-JLR-MLP<br><br>REPORT AND RECOMMENDATION |

### I.   INTRODUCTION

Petitioner, who is currently in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 immigration habeas action *pro se* to obtain release from detention or a bond hearing. (Pet. (Dkt. # 1).) Currently before the Court is the Government's motion to dismiss (Mot. (dkt. # 6)), which Petitioner opposes (Resp. (dkt. # 9)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

## II. BACKGROUND

In October 2017, Petitioner, who is a citizen of Eritrea, arrived at the Hidalgo, Texas port of entry without valid entry documents. (Forsyth Decl. (Dkt. # 7), Exs. A-B.) ICE initially issued Petitioner an expedited removal order but later served a Notice to Appear, placing him in full removal proceedings. (*Id.*, Exs. A, C.) The Notice to Appear charged Petitioner with removability based on his lack of valid immigration entry documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.*, Ex. C.)

Petitioner subsequently applied for asylum and relief under the Convention Against Torture. (Forsyth Decl., Ex. D.) On December 15, 2017, the immigration judge ("IJ") denied Petitioner's claims for relief and ordered him removed to Eritrea. (*Id.* at 4-5.) Petitioner did not appeal this decision to the Board of Immigration Appeals ("BIA"), and the IJ's order became administratively final 30 days later on January 14, 2018.

On April 10, 2018, ICE released Petitioner on an order of supervision because it had not been able to effect his removal during the 90-day removal period that began after his removal order became administratively final. (*See* Forsyth Decl., Ex. E.) On or about October 2, 2018, ICE received an Eritrean travel document for Petitioner. (Schaefer Decl. (Dkt. # 8) at ¶ 7.) On November 13, 2018, ICE revoked Petitioner's order of supervision and took him into custody to effect his removal. (Forsyth Decl., Ex. F; Schaefer Decl. at ¶ 8.)

On December 12, 2018, Petitioner was removed from the United States via an unescorted commercial flight. (Schaefer Decl. at ¶ 9.) During a layover in Addis Ababa, Ethiopia, Petitioner left the airport instead of catching his connecting flight to Asmara, Eritrea. (*Id.*) In a letter to the Court, Petitioner explains that immigration officers at the Addis Ababa airport interrogated him about his boarding pass for the flight to Eritrea but eventually released him from the airport.

(Resp. at 1.) He states that when he stepped outside the airport, several people began chasing him, and he took refuge in a nearby hotel. (*Id.*)

Also on December 12, 2018, Petitioner filed a habeas action in this district and sought an emergency stay of removal. *Gebrehiwet v. Barr*, No. C18-1790, Dkt. # 1 (W.D. Wash.). On December 13, 2018, the Court granted his motion to stay. *Id.*, dkt. # 3. After Petitioner's counsel informed the Court that he had already left the country, the Court ordered ICE to return him to the Western District of Washington as soon as possible. *Id.*, dkt. # 7. On December 19, 2018, Petitioner was returned from Ethiopia to the United States and detained at the NWIPC. (Schaefer Decl. at ¶ 12.)

On January 17, 2019, Petitioner filed a motion to reopen his removal proceedings with the immigration court. (Schaefer Decl. at ¶ 14.) On February 13, 2019, an IJ denied Petitioner's motion, and on May 8, 2019, the BIA dismissed Petitioner's appeal. (*Id.* at ¶¶ 15-17.) Petitioner then voluntarily dismissed his habeas action. *Gebrehiwet*, dkt. # 35. On June 4, 2019, Petitioner filed a petition for review in the U.S. Court of Appeals for the Fifth Circuit, challenging the BIA's dismissal of his motion to reopen. (Forsyth Decl., Ex. I.) He moved for a stay of removal, which the Fifth Circuit denied on July 26, 2019. (*Id.*, Ex. J.) Petitioner's petition for review remains pending, and oral argument is tentatively scheduled for the week of October 5, 2020. *Michael v. Barr*, No. 19-60384 (5th Cir.) (8/14/2020 Docket Entry).

On July 24, 2019, ICE reviewed Petitioner's detention and determined he should remain in custody because he posed a significant flight risk due to his final order of removal and premature departure from his flight to Eritrea. (Forsyth Decl., Ex. B.)

On August 16, 2019, ICE obtained a second travel document from the Eritrean government because the first had expired. (Supp. Schaefer Decl. (Dkt. # 11) at ¶ 3.) ICE

REPORT AND RECOMMENDATION - 3

1  scheduled Petitioner for an escorted removal from the United States to Eritrea on October 28,
2  2019, via a commercial airline flight. (Schaefer Decl. at ¶ 22; Forsyth Decl., Ex. K.) When the
3  transport van arrived at the airport, however, Petitioner curled up into a ball and refused to get
4  out of the vehicle. (Schaefer Decl. at ¶ 22.) As a result, ICE cancelled his removal and returned
5  him to the NWIPC. (*Id.*) ICE then scheduled him for another escorted removal via a commercial
6  airline flight on March 23, 2020. (*Id.* at ¶ 23.) ICE cancelled this flight, however, because Eritrea
7  imposed a 14-day quarantine requirement as a result of the COVID-19 pandemic, which would
8  have required the escorting ICE officers to quarantine in Eritrea before they could return to the
9  United States. (*Id.*)

10  ICE next began the process of arranging a chartered flight to Eritrea, which would not
11  require local ICE officers to accompany Petitioner to Eritrea. (Schaefer Decl. at ¶ 24.) Such a
12  flight requires approval from the Eritrean government. (*Id.*) This process remains ongoing.

13  Petitioner's second travel document to Eritrea expired on August 15, 2020. (Supp.
14  Schaefer Decl., Ex. A.) In anticipation of the expiration of Petitioner's travel document before a
15  chartered flight could be arranged, ICE applied for a third travel document to the Eritrean
16  government in July 2019. (Hammer Decl. (Dkt. # 12) at ¶ 5.) As of August 19, 2020, ICE had
17  not yet received a new travel document but did not anticipate any difficulty in obtaining one. (*Id.*
18  at ¶ 6.)

19  ### III. DISCUSSION

20  Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, such as Petitioner,
21  who have been ordered removed. Under § 1231(a), the U.S. Department of Homeland Security

("DHS")[1] is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). In this case, the removal period began on the date Petitioner's removal order became administratively final. *See* 8 U.S.C. § 1231(a)(2)(B)(i). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are "unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). ICE has determined that Petitioner presents a flight risk based on his lack of cooperation with ICE's removal efforts (Forsyth Decl., Ex. B), thus his detention comports with the statute.

Although § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely. In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 5

future." *Id.* Nevertheless, courts must remember that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

But for Petitioner's lack of cooperation, ICE would have removed him on October 28, 2019. ICE has already obtained two travel documents and does not anticipate difficulty obtaining a third. Although scheduling Petitioner's removal has been complicated by the COVID-19 pandemic, there is no evidence that ICE and the Eritrean government will not be able to come to an arrangement regarding a chartered flight. Accordingly, Petitioner has failed to provide a good reason to believe his removal is not significantly likely to occur in the reasonably foreseeable future. *See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008) (detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country). Thus, he is not entitled to release.

Petitioner also requests a bond hearing. The Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is not imminent. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011); *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 765-66 (9th Cir. 2020) (reaffirming *Diouf II*'s holding). The Government argues that because Petitioner's "removal has not been stayed and ICE has a valid travel document, [his] removal could become imminent at any time, *i.e.*, as soon as ICE completes the necessary travel arrangements."[2] (Mot. at 10.) Based on the most current information before the Court, ICE does not have a valid travel document for Petitioner and has not yet scheduled a chartered flight despite making efforts to do so since March 2020.

---

[2] At the time the Government submitted its brief, Petitioner's second travel document was still valid.

REPORT AND RECOMMENDATION - 6

Accordingly, the Court concludes that Petitioner's removal is not imminent and that he is entitled to a bond hearing pursuant to *Diouf II*.

### IV.    CONCLUSION

The Court recommends that both the Government's motion to dismiss (dkt. # 6) and Petitioner's habeas petition (dkt. # 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends denying Petitioner's request for release but ordering the Government to provide him with a *Diouf II* bond hearing within 30 days of the order on this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on September 18, 2020.

Dated this 27th day of August, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge